UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,

                                    Case No.  08-CR-20289

vs.

                                    HON.  GEORGE CARAM STEEH

D-1 DAVID ERIKE MACLLOYD

                Defendant.

_____/

## ORDER DENYING DEFENDANT'S 28 U.S.C. § 2255 MOTION

On August 26, 2010, Mr. David MacLloyd was convicted by jury verdict of Conspiracy to Distribute and Possess with Intent to Distribute More Than 5 kilograms of Cocaine, 21 USC §846 and §841(a)(i) (Count 1); Aiding and Abetting Possession of More Than 5 Kilograms of Cocaine, 21 USC §841(a)(1) and 18 USC §2 (Count 2); Use of Telephone to Cause and Facilitate a Felony Drug Transaction, 21 USC §843 (Counts 3-5 and 18-25); Maintaining a Drug-Involved Premises, 21 USC §856(a)(1) (Count 26) and Forfeiture (Count 31). On February 6, 2012, MacLloyd was sentenced to 360 months imprisonment on Counts 1 and 2 and received lesser sentences on the other counts.

Mr. MacLloyd filed a timely direct appeal of his convictions and sentences to the Sixth Circuit Court of Appeals. That court affirmed his

convictions and sentences on April 16, 2013, *United States v. MacLloyd*, 526 F. App'x 434, 447 (6th Cir. 2013). A Petition for Writ of Certiorari was denied by the U.S. Supreme Court on October 8, 2013.

On January 24, 2014, MacLloyd filed a timely *pro se* motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. Among his claims for relief, MacLloyd alleged that Loeb provided ineffective assistance by "not properly communicating [a] plea deal." (R.252, 2255 Motion, PgID #2475). MacLloyd alleged that the government presented Loeb with a formal written plea offer that "w[as] never shown to me or properly communicated to me." (R.252, PgID #2475). Loeb allegedly never discussed the offer's details or merits, he provided only a "non-detailed description of a plea." (R.252, PgID #2469-70, 2475). MacLloyd further alleged that if Loeb had properly advised him, MacLloyd "would have definitely taken the [plea deal] because of the cooperation." (R.252, PgID #2475). On February 14, 2014, MacLloyd filed a substantially identical amended motion, adding further claims not relevant to this proceeding. (R.256, Amended 2255 Motion, PgID #2495).

On July 11, 2014, the government responded opposing MacLloyd's motion arguing that MacLloyd's ineffective assistance issues fall "woefully short in proving these acts or omissions were 'outside the wide range of professionally competent assistance.'" (R.263, PgID #2513. On August 18,

2014, MacLloyd replied to the government and provided additional information about Loeb's ineffective assistance with regard to a written Rule 11 plea offer by the government. (R.265, PgID #2543), and further elaborated about the circumstances of his claim against Loeb in an addendum to his reply (R.267, PgID #2547).

On November 20, 2014, this Court denied Mr. MacLloyd's motion without a hearing. Regarding MacLloyd's claims of ineffective assistance of counsel, the court stated that "[t]he Sixth Circuit and other courts reject ineffective assistance claims that rest upon conclusory, unsupported allegations of counsel's deficient performance." (R.268, Order, PgID #2555). The Court found that MacLloyd "likewise failed to show the prejudice required for a finding of ineffective assistance of counsel." The Court denied a certificate of appealability. (R.268, PgID #2556).

On December 3, 2014, MacLloyd filed a timely notice of appeal, and on April 6, 2015, he moved the Court of Appeals for a certificate of appealability (R.269, PgID #2558). On August 18, 2015, the appeals court granted a certificate of appealability on the issue of "whether the district court should have held an evidentiary hearing on MacLloyd's claim that he was denied the effective assistance of counsel because Loeb did not fully advise him of a favorable plea offer." On April 4, 2017, the Sixth Circuit entered an opinion reversing and remanding for an evidentiary hearing.

- 3 -

This Court held an evidentiary hearing held on November 30 and
December 7, 2017.

Findings of Fact

1.    On May 22, 2008, a federal grand jury returned an indictment
charging David Erike MacLloyd, his brother Clifford, and others with
conspiracy to possess with intent to distribute five kilograms or more of
cocaine, in violation of Title 21, United States Code, Section 846. [R. 1].
If convicted as charged, MacLloyd faced a mandatory minimum term of
imprisonment of ten years and a maximum of life.

2.    MacLloyd appeared on the indictment on May 28, 2008, represented
by attorney Nicholas Kazmerski. [R. 5]. Kazmerski was a student of
attorney Thomas Loeb's at the trial college of the Criminal Defense
Attorneys of Michigan, and he asked Loeb to assist him in representing
MacLloyd, due to Loeb's more significant experience with federal criminal
defense. [R. 293 at 8-9, PgID 2623-24]. Loeb entered an appearance on
June 20, 2008. [R. 40].

3.    Loeb has been a licensed attorney in Michigan, representing
criminal defendants for more than forty years; for at least twenty of those
years, he has been representing defendants in federal court. [R. 293 at 6,
PgID 2621]. Loeb is very familiar with the ethical obligations of attorneys; in
fact, part of his practice is grievance defense, representing licensed

professionals accused of misconduct. [R. 293 at 30-31, PgID 2645-46].

MacLloyd signed a fee agreement, paying Loeb $15,000 of a promised

$30,000.  [R. 293 at 9, 32, 57-58, PgID 2624, 2647, 2673-74]. Loeb advised

MacLloyd of his statutory sentencing exposure (mandatory ten-year

minimum, up to life) at the very beginning of their relationship. [R. 293 at 58,

PgID 2674].

4.    On September 23, 2008, then-Assistant United States Attorney

(AUSA) Matthew Schneider faxed a proposed plea agreement and

cooperation agreement to Kazmerski. [Gov't Ex. 1]. The plea agreement

contemplated a sentencing guideline range of 135-168 months, with a ten-

year mandatory minimum. *Id.* The cooperation agreement provided that, if

the government – in its sole discretion – determined MacLloyd had provided

substantial assistance, the government would not seek to establish a higher

guideline range by contesting acceptance of responsibility or establishing a

greater drug amount than contemplated by the plea agreement. *Id.*

5.    On October 22, 2008, AUSA Schneider faxed a letter to

Loeb, referencing a plea agreement he had forwarded to Loeb and

advising him that plea agreement would result in an estimated guideline

range of 135-168 months. [Gov't Ex. 2]. The referenced plea agreement

was the same one that had been provided to Kazmerski on September 23.

[R. 293 at 15, PgID 2630]. AUSA Schneider further advised that

- 5 -

MacLloyd's estimated guideline range if convicted at trial was 235-293 months. [Gov't Ex. 2]. In addition, a Rule 11 plea agreement was offered to MacLloyd's brother and co-defendant, Clifford MacLloyd, which was conditioned on both of the brothers pleading guilty. [R. 183 at 186-87, PgID 873-74].

6.    MacLloyd and Loeb met before Court status conferences held on November 6, 2008, and December 1, 2008. At the evidentiary hearing, Loeb testified that he only retains his files for five years, so he no longer had his files from this case. While Loeb did not specifically recall what happened in this case, he testified that it was his practice to provide a copy of the plea offer and review it with his client if he had any questions. [R. 293 at 23, PgID 2638]. According to Loeb, MacLloyd consistently refused to consider pleading guilty, advising Loeb that he wanted his "day in court." [R. 293 at 22, PgID 2637]. Loeb testified that he made MacLloyd aware of this plea offer and MacLloyd rejected it. [R. 293 at 25, PgID 2640]. The Court finds Loeb's testimony in this regard to be credible, particularly because the dates he refers to were dates set for plea hearings.  It is logical that Loeb would have gone over the government's Rule 11 with MacLloyd in preparation for their appearance before the Court, as the very reason MacLloyd and Loeb came to court those days was to address whether Loeb was going to enter a guilty plea.

7.    On December 10, 2008, AUSA Schneider faxed a letter to Loeb confirming a meeting then set for December 23 in the U.S. Attorney's Office in Detroit. [Gov't Ex. 3]. The purpose of the meeting, characterized as a "reverse proffer," was for AUSA Schneider and the case agents to present the government's evidence to Loeb and MacLloyd so that MacLloyd could understand the strength of the case against him and to discuss a plea. [Gov't Ex. 3; R. 293 at 11-12, PgID 2626-27]. This reverse proffer meeting was rescheduled for January 8, 2009. [Gov't Ex. 4]. One of the things Loeb told MacLloyd before the meeting was that a purpose of the reverse proffer was "for him to consider the Rule 11 plea agreement that [they had] discussed." [R. 293 at 55, PgID 2670]. Loeb was impressed with the quality of the evidence of MacLloyd's guilt and recommended that he plead guilty. [R. 293 at 19, PgID 2634]. Loeb and MacLloyd discussed the pending plea offer again after the reverse proffer, and MacLloyd maintained his rejection of that offer. [R. 293 at 29-30, PgID 2644-45].

8.    MacLloyd's claim that the reverse proffer took place in July or August 2008 [R. 294 at 60, PgID 2675] is not credible in light of the documentary evidence contradicting that claim, specifically the letters scheduling and rescheduling the reverse proffer.  A reverse proffer designed to encourage acceptance of a plea offer makes more sense if a plea offer has already been made.  The government's letter confirming the reverse proffer

meeting on December 23, 2008 states the purpose was to discuss the possibility of a plea. [Gov't Ex. 3]. A Rule 11 plea agreement had already been offered to MacLloyd and the purpose of the reverse proffer was to convince MacLloyd to accept the outstanding plea agreement, which offered a range of 135-168 months with a mandatory minimum of ten years. A cooperation agreement was attached to the Rule 11 which offered the possibility of a lower sentence if the Court varied downward from that range. The meeting failed to achieve that purpose because MacLloyd ultimately rejected the offer.

9.    MacLloyd claims that AUSA Schneider offered him a ten-year plea at the reverse proffer [R. 294 at 8, PgID 2712; R. 256 at 10]. There is nothing in writing demonstrating that this occurred. MacLloyd testified that after the proffer he asked Loeb about the ten year offer and that Loeb responded "no wine before its time." This may have been Loeb's way of explaining to MacLloyd that plea negotiations are a process and they had to let the process take its course. Or, Loeb may have been referring to the fact that MacLloyd's cooperation would dictate his ultimate sentence.

10.    Referring to the government's alleged offer of ten years, MacLloyd claimed at the evidentiary hearing he wanted to "jump on that" deal, [R. 294 at 8-9, PgID 2712-13], but in his 2255 motion, he said he "did not entertain this plea because [he] was still operating under the premise that

[he] would be pleading out to a 5 year sentence … later." [R. 256 at 10].

The Court does not believe that either of these claims made by MacLloyd

supports a legitimate 5 or 10 year plea deal that was offered by the

government.

11.   At the next status conference, on January 13, 2009, the Court began

the hearing under the assumption that David and Clifford MacLloyd were

prepared to plead guilty to the conspiracy charge. [R. 183 at 4, PgID 871].

Before that hearing, Loeb and MacLloyd had again discussed the

possibility of a plea. [R. 293 at 41, PgID 2656]. In response to questions

from the Court, David MacLloyd definitively indicated his wish to go to trial;

he affirmed that he had reviewed the Rule 11 plea agreement and

understood there was a cooperation agreement as well. [R. 183 at 5, PgID

872]. MacLloyd responded to questions by the Court that he understood

the agreement's guideline range to be 135-168 months. *Id.* The Court

explained that under the terms of the cooperation agreement it would have

"the discretion to consider a sentence of something less than the

mandatory minimum sentence." *Id.* at 872-73. MacLloyd affirmed he had

"ample opportunity" to discuss his decision with his lawyer; that he

understood the decision whether to plead was up to him, no matter what

his lawyer's advice was, and that he made the decision to reject the 135-

168 month plea offer without having been forced or pressured by anyone.

*Id.* at 873.

12.    The Court does not credit MacLloyd's account that he only answered the Court's questions at the plea hearing in the affirmative because he was instructed to do so by Mr. Loeb.  The Court witnessed Mr. MacLloyd's demeanor at both the plea hearing in 2009 and at the evidentiary hearing on remand, and has at all times found him to be quite self-confident, articulate and capable of speaking on his own behalf.  In addition, MacLloyd witnessed the discussion between the Court and Mr. Ihrie, his brother's attorney, regarding the fact that Clifford wanted to enter a guilty plea under his Rule 11, but because it was conditioned on David entering a guilty plea as well, he could not do so.  Mr. Ihrie explained that because David wanted to go to trial, Clifford had to as well.  [R. 83 at 6-7, PgID 873-74].

13.    MacLloyd's testimony that Loeb never discussed the plea offer with him and that his answers to the Court on January 13 were lies Loeb encouraged him to tell [R. 293 at 64-65, PgID 2679-80] is not credible, in light of its self-serving nature, the Court's own observations and recollections, and Loeb's credible contradictory testimony. Even MacLloyd's own filings in this case contradict his testimony – in his reply to the government's response to his 2255 motion, MacLloyd acknowledges that Loeb informed him in January 2009 "that the government had offered

[him] a plea for 135-168 months." [R. 265 at 3, PgID 2543]. MacLloyd also has experience in the federal criminal justice system, with a prior federal conviction from the 1990s, which he sustained at trial after rejecting a plea offer. [R. 293 at 75-76, PgID 2690-91]. In 2008, he was 38 years old. [R. 293 at 80, PgID 2695]. In addition there is no allegation that MacLloyd ever asked Loeb or any of his subsequent attorneys about an offer for 135-168 months, though he admits he was aware of such an offer at least as of the Court hearing on January 13, 2009. [R. 294 at 12, PgId 2716].

14. On January 29, 2009, a federal grand jury returned a superseding indictment against MacLloyd and the other remaining defendants. MacLloyd was charged with additional offenses including aiding and abetting another in the possession with intent to distribute, using a communications facility to commit conspiracy, maintaining a drug-involved premises and money laundering. [R. 54]. While the superseding indictment charged MacLloyd with additional offenses, it did not increase the mandatory minimum or maximum punishments.

15. Loeb was concerned about MacLloyd not paying the remaining $15,000 that he owed on his retainer agreement. Loeb contends that he offered to lower his fee if MacLloyd would plead because he did not think he was going to be paid any more. [R. 293 at 24, PgID 2639]. MacLloyd refused to plead, disagreed with Loeb's legal advice, and failed to pay his

legal fees.  As a result, there was a breakdown in the attorney-client

relationship and Loeb asked for and received permission from the Court to

withdraw on February 24, 2009. [R. 293 at 35-36, PgID 2650-51; R. 58,

60]. Certainly, there was frustration on the part of MacLloyd as well as

Loeb, and MacLloyd even voiced his concerns to the Court that Loeb had

been paid $15,000 and did no work to prepare for his trial. [R.184, Tr.,

2/24/09, PgID 889-90]. Given the breakdown in the relationship, during the

weeks preceding the February 24, 2009 withdraw motion hearing, it is

unlikely that Mr. Loeb continued to discuss the plea offer with Mr.

MacLloyd.  However, the terms of the Rule 11 had already been

communicated to MacLloyd and rejected by him in court. The fact that

there was no further discussion about the plea was due to MacLloyd's lack

of interest in accepting the plea. In addition, when the superseding

indictment was filed on January 29, 2009, the previous Rule 11 was

terminated and there was no new deal to discuss.

16.    On March 5, 2009, defense attorney James Waske entered an

appearance for MacLloyd, having been appointed pursuant to the

Criminal Justice Act. [R. 64, 68]. Waske has been a member of the

Michigan state bar, doing criminal defense work, for 38 years; for more

than thirty years, he has represented defendants in federal criminal cases.

[R. 294 at 47-48, PgID 2751-52].

17.    On May 13, 2009, AUSA Schneider sent a proposed plea agreement to Waske. [Gov't Ex. 5-6]. This plea agreement calculated the guideline range at 168-210 months, with the mandatory minimum still at ten years. [Gov't Ex. 6]. The higher range resulted from adding four points, rather than two, to the base offense level for MacLloyd's leader / organizer role in the offense. [Gov't Ex. 1, 6]. Like the previously provided cooperation agreement, the associated cooperation agreement provided that, if the government determined MacLloyd had provided substantial assistance, the government would not seek to establish a higher guideline range by contesting acceptance of responsibility or establishing a greater drug amount than contemplated by the plea agreement. *Id.*

18.    The same day, AUSA Schneider faxed Waske a letter advising him that MacLloyd's guideline range under the agreement would be an estimated 168-210 months, but his guideline range if convicted at trial would be 360 months to life. [Gov't Ex. 5].

19.    At the status conference on May 14, 2009, the parties informed the Court, with MacLloyd present, that the government had made a plea offer but both David and Clifford MacLloyd intended to go to trial. [R. 185, PgID 896-97]. At the next status conference, on June 24, 2009, Waske advised the Court that MacLloyd did not want to accept the plea offer despite the fact that his brother's offer was contingent on both of them pleading. [R.

186, PgID 907-09].

20.    The grand jury returned a second superseding indictment charging Clifford and David MacLloyd on November 19, 2009. [R. 117]. Waske and MacLloyd's relationship eventually broke down and Waske's second motion to withdraw was granted by the Court on January 7, 2010. [R. 123].

21.    The Court appointed defense attorney David Cripps to represent MacLloyd, and Cripps entered an appearance on March 3, 2010. [R. 124, 129]. Cripps has been practicing criminal defense as an attorney in Michigan for 35 years and representing federal defendants for nearly thirty of those years.  [R. 294 at 72, PgID 2776].

22.    At a status conference on April 12, 2010, with MacLloyd present and in agreement, Cripps told the Court that MacLloyd had not agreed to plead guilty but requested a new plea cut-off date. [R. 192, PgID 996-98]. At the plea cut-off, on July 26, 2010, Cripps acknowledged to the Court that he had received a written plea agreement from AUSA Schneider and had discussed it with MacLloyd, but MacLloyd had "not come to the point that he is yes or no to it." [R. 193, PgID 1005- 06].

23.    On August 2, 2010, AUSA Schneider advised Cripps that he had forwarded to him the 168-210 month plea offer, previously provided to Waske. [Gov't Ex. 7]. AUSA Schneider also advised Cripps that MacLloyd would face a range of 360 months to life if he was convicted at trial. *Id.*

Cripps conveyed the plea agreement and estimates of the respective

guideline ranges to MacLloyd right away. [R. 294 at 74, PgID 2778]. They

had multiple discussions about the agreement and the difference in

penalties. [R. 294 at 76, PgID 2780]. Cripps testified that he

"remember[ed] this discussion because . . . it was not the usual response

you get in a case of this nature.  [MacLloyd] was not interested in any plea

negotiation.  He simply wanted to go to trial, and for me to do it the best I

could with the evidence that was there." [R. 294 at 76-77, PgID 2780-81].

The Court finds that Mr. Cripps' testimony at the December 7, 2017

evidentiary hearing was credible.

24.     At the final pretrial conference, on August 5, 2010, the Court

addressed MacLloyd personally after stating it had been informed

MacLloyd had rejected the government's last plea offer. [R. 179, PgID

843]. The Court described the charges to MacLloyd and made sure he

understood that he would not get an offense-level reduction for

acceptance of responsibility unless he pleaded guilty that day. [R. 179,

PgID 846]. MacLloyd said he understood and wished to go to trial. *Id.*

25.     Even on the day of trial, when MacLloyd learned his brother Clifford

would testify against him, he still refused to change his position about

going to trial. [R. 294 at 77, 82, PgID 2781, 2786]. During the entire time

Cripps represented him, MacLloyd was never interested in any plea – not

even Cripps's suggestion that he might be able to get his sentence down to the mandatory ten years. [R. 294 at 82, 84, PgID 2786, 2788].

26.    MacLloyd was convicted on August 26, 2010, at the conclusion of his trial. [R. 143]. On February 6, 2012, the Court sentenced MacLloyd to 360 months' imprisonment. [R. 237].

27.    In July 2011, MacLloyd wrote a letter to Cripps saying that he had shown "strong performance" during the trial, but he asked him to file an affidavit saying he was not sufficiently prepared, as part of his effort to obtain post-conviction relief. [R. 294 at 25, 78, PgID 2729, 2782]. MacLloyd offered to guarantee in return that he would not file a malpractice suit against Cripps. *Id.* Cripps refused, and MacLloyd filed a grievance with the bar against Cripps. *Id.*

28.    MacLloyd's claim that he discovered the plea agreements that had been communicated to his attorneys for the first time between his conviction and sentencing [R. 294 at 13, PgID 2717] is not credible. The Court bases this determination on the contradictory, credible testimony from Loeb, Waske, and Cripps, the self-serving nature of MacLloyd's testimony, the documentary evidence, MacLloyd's dishonest behavior with regard to the grievance against Cripps, and the Court's observations of the proceedings that took place in its presence.

29.    MacLloyd's claim that he would have accepted both the 135-168 and 168-210 month plea offers, had they been communicated to him, is incredible. Loeb, Waske, and Cripps testified that they did communicate these offers to him, and he rejected them. Having been informed of the 135-168 month plea offer by the Court directly, MacLloyd rejected it in open court and, by his own admission, never asked any of his attorneys to see whether that offer might still be available.

30.    MacLloyd's true, consistent position throughout the proceedings was that he was not interested in pleading guilty under any terms that were actually offered, even when he could have argued for a ten-year sentence under the cooperation agreement and helped his brother at the same time.

<u>Conclusions of Law</u>

To prevail in an ineffective assistance claim, Mr. MacLloyd has the burden to show that Mr. Loeb provided "deficient performance" and that he was prejudiced by that deficiency. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984); *Huff v. United States*, 734 F.3d 600, 606 (6th Cir. 2013). "[D]efense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 566 U.S. 134, 145 (2012). The Sixth Circuit has observed further that a criminal defense attorney "has a clear obligation to fully inform her client of the available options." *Smith v.*

*United States*, 348 F.3d 545, 552 (6th Cir. 2003). A failure to explain "the elements necessary for the government to secure a conviction, discuss the evidence as it bears on those elements, and explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available … may constitute deficient assistance." *Id.* at 553 (citation and quotation omitted).

In this case, the Court finds that Loeb communicated to MacLloyd the 135-168 month plea agreement and the consequences of accepting or rejecting that agreement. These communications occurred, at the very least, on dates when attorney and client were at the Court for scheduled plea cutoff conferences: November 6, 2008, December 1, 2008 and January 13, 2009. Each of these dates was prior to the plea cutoff date associated with the original indictment.  In fact, the date was adjourned twice at the request of counsel in order to continue making guideline calculations and to engage in further plea discussions.  At the plea cutoff hearing on January 13, 2009, the Court questioned Mr. MacLloyd about the Rule 11 and the cooperation agreement and was satisfied that MacLloyd was fully familiar with the terms of those documents and the consequences of both accepting and rejecting the agreements after discussing same with Mr. Loeb. While satisfied that Loeb explained the Rule 11 and cooperation agreement with his client in sufficient detail, to

the extent that Loeb may not have done so in even greater detail would have been due to the fact that it takes two to engage in a discussion and MacLloyd demonstrated a lack of interest in accepting the plea that was actually offered.  The Court concludes that Mr. Loeb's performance was not deficient as alleged by Mr. MacLloyd.

Even if MacLloyd could show deficient performance by Loeb, he must further demonstrate such deficient performance resulted in going to trial, when if he had been properly advised he would have pleaded guilty. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Lafler v. Cooper*, 566 U.S. 156, 163-64 (2012).  To make this showing of prejudice, MacLloyd must show "a reasonable probability" that "but for the ineffective advice of counsel," that three things are true: (1) "the plea offer would have been presented to the court;" (2) "the court would have accepted its terms;" and (3) the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *See Lafler*, 566 U.S. at 164.

The only issue is whether MacLloyd would have accepted the 135-168 month plea agreement had he known about it and been fully advised of its terms.  When supported by the evidence, ". . . a substantial disparity between the penalty offered by the prosecution and the punishment called for by the indictment is sufficient to establish a reasonable probability that

a properly informed and advised defendant would have accepted the prosecution's offer." *Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2003). The evidence in this case, however, is that MacLloyd was fixated on receiving a ten or even 5 year plea offer that never came. This is true even though MacLloyd acknowledged that Loeb told him he should plead because "[t]his will end terribly for you." [R. 293 at 62, PgID 2677]. The evidence is that MacLloyd was not interested in pleading to 135-168 months, even with a cooperation agreement that might have resulted in an even lower sentence. Where three of his attorneys had the same experience with MacLloyd wanting to go to trial instead of pleading, the substantial disparity between the offer and the actual sentence is not relevant. *See Comrie v. United States*, 455 F. App'x 637, 640 (6th Cir. 2012).

MacLloyd argues that the Court ought not consider the testimony of Waske and Cripps regarding their plea-related communications with him due to the attorney-client privilege. The Court permitted counsel's testimony at the evidentiary hearing because habeas petitioners implicitly waive attorney-client privilege "by claiming ineffective assistance of counsel or by otherwise raising issues regarding counsel's performance." *In re Lott*, 424 F.3d 446, 452-53 (6th Cir. 2005). Though the remand in

this case was limited to whether Loeb fully advised him of a favorable plea offer, MacLloyd's prejudice argument focuses on his continued readiness to plead right up until trial. Having made his desire to accept a plea central to his claim of prejudice due to ineffective assistance of counsel, MacLloyd has waived his attorney-client privilege as to this issue.

It is true that the later plea offers were not identical to the one MacLloyd was offered while he was represented by Loeb. This is because the charges he faced were also not the same due to superseding indictments having been filed. What was the same, however, was MacLloyd's attitude about going to trial instead of pleading.

There is no credible evidence to support a reasonable probability that MacLloyd would have accepted the plea offer assuming that Loeb's performance had been competent. The Court concludes that Loeb's performance did not prejudice MacLloyd.

For the foregoing reasons, defendant's motion to vacate pursuant to 28 U.S.C. § 2255 is DENIED.

IT IS SO ORDERED.

Dated:  May 24, 2018

                              s/George Caram Steeh
                              GEORGE CARAM STEEH
                              UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
May 24, 2018, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk